✗ ORIGINAL

**FILED**

JAN 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

WILLIE HAMPTON  # 79948-01
Full Name

U.S.P. VICTORVILLE
Committed Name (if different)

U.S.P. Victorville
Full Address Including Name of Institution

P.O. BOX 5500

Adelanto, CA  92301
Prison Number (if applicable)

CASE NUMBER  1:06CV00158

JUDGE: Ricardo M. Urbina

DECK TYPE: Pro se General Civil

DATE STAMP: 01/27/2006

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

WILLIE HAMPTON

Plaintiff,

VS.

TUNICA COUNTY BOARD OF SUPERVISORS,
ET. AL.,
TUNICA COUNTY SHERIFF'S DEPARTMENT
JEROME HUDSON, JERRY ELLINGTON,
JOHN DOES 1~5
JANE DOES 1~5

Defendants(s).

Case No. CV _____
(To be supplied by the Clerk)

CIVIL RIGHTS COMPLAINT
PURSUANT TO  (check one)

☒ 42 U.S.C. § 1983.

or

☐ Bivens v. Six Unknown Agents
403 U.S. 388 (1971)

## A.  PREVIOUS LAWSUITS

1) Have you brought any other lawsuits in a federal court while a prisoner:  ☒ Yes   ☐ No

2) If your answer to A is yes, how many? __1__ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:

Plaintiff ___ Willie Hampton ___

Defendants ___ Raymond Barker, Tammy Barker ___

b. Court
___ USDC, Northern District of Mississippi ___

c. Docket or case number ___ 2:04cv160-P-A ___

d. Name of judge to whom case was assigned ___ W. Allen Pepper ___

e. Disposition (For example: Was the case dismissed?  If so, what was the basis for dismissal?
Was it appealed?  Is it still pending?)
___ Failure to state a claim ___

f. Issues raised: ___ Constructive Fraud, Slander and Libel ___

g. Approximate date of filing lawsuit ___ June 16, 2004 ___

h. Approximate date of disposition ___ October 25, 2004 ___

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1) Is there a grievance procedure available at the institution where the events relating to your current
complaint occurred?        N/A
☐ Yes    ☐ No

2) Have you filed a grievance concerning the facts relating to your current complaint?
☐ Yes  ☒ No

If your answer is no, explain why not ___ Lack of Jurisdiction ___

3) Is the grievance procedure completed?
☐ Yes  ☐ No   N/A

If your answer is no, explain why not  Lack of Jurisdiction

4) Please attach copies of papers related to the grievance procedure.    N/A

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff  Willie Hampton

(print plaintiff's name)

who presently resides at  P.O. Box 5500, Adelanto, CA  92301  ; were violated

(mailing address or place of confinement)

by the actions of the defendant(s) named below, which actions were directed against plaintiff at _____

Tunica County, Mississippi

(institution/city where violation occurred)

on (date or dates)  8/24/1999  ,  3/21/2000  ,  3/27/2000  .

(Claim I)                (Claim II)              (Claim III)

(You need not name more than one defendant or allege more than one claim; however, make a copy of this page to provide the information below if you are naming more than five (5) defendants.)

1) Defendant  Tunica County Board of Supervisors  , resides or works at

(full name of first defendant)

5126 Old Mhoon Landing Road Tunica County MS.  , and is employed as

(full address of first defendant)

Board Of Supervisors

(defendant's position and title, if any)

The defendant is sued in his/her:  ☒ individual  ☒ official capacity.  (Check one or both).

Explain how this defendant was acting under color of law:

Authorized/Funded and/or otherwise aided and abetted Defendants

violations of Plaintiff's Civil Rights.

2) Defendant  Tunica County Sheriff's Department  resides or works at

(full name of second defendant)

5126 Old Mhoon Landing Road, Tunica County MS. 38676 , and is employed as
(full address of second defendant)

TunicaCounty Sheriff's Department
(defendant's position and title, if any)

The defendant is sued in his/her:   ☒ individual   ☒ official capacity.  (Check one or both).

Explain how this defendant was acting under color of law:

Authorized and/or otherwise aided and abetted Defendants

  violantion of Plaintiff's Civli Rights

3) Defendant  Jerome Hudson                                        resides or works at
(full name of third defendant)
5126 Old Mhoon Landing Road, Tunica County MS.
Last Known Address                                        , and is employed as
(full address of third defendant)

Former LT. Deputy Sheriff
(defendant's position and title, if any)

The defendant is sued in his/her:   ☒ individual   ☒ official capacity.  (Check one or both).

Explain how this defendant was acting under color of law:

While color of state law, submmitted false Affidavits, converted

stolen property, falsified records (more allegation annexed

4)  Defendant  Jerry Ellington                                        resides or works at
(full name of fourth defendant)
5126 Old Mhoon Landing Road, Tunica County MS  38676
Last Known Address                                        , and is employed as
(full address of fourth defendant)

Former Tunica County Sheriff
(defendant's position and title, if any)

The defendant is sued in his/her:   ☒ individual   ☒ official capacity.  (Check one or both).

Explain how this defendant was acting under color of law:

Authorized and/or otherwise aided and abetted Defendants violation

  of Plaintiff's Civil Rights.

5)  Defendant _____ resides or works at
                        (full name of fifth defendant)

        _____ , and is employed as
                        (full address of fifth defendant)

        _____
                        (defendant's position and title, if any)

The defendant is sued in his/her:   ☐ individual   ☐ official capacity.  (Check one or both).

Explain how this defendant was acting under color of law:

_____

_____


## E.  CLAIMS*


### CLAIM I


The following civil right has been violated:

☒   REFER  TO  ANNEXED  ATTACHMENTS  FOR  COMPLETE  LISTING  OF  CLAIMS

_____

_____

_____

_____


* If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the
same outline.

**Supporting Facts:** Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraph, exactly what each DEFENDANT [by name] did to violate your rights. Add more pagers if necessary.

X REFER TO ANNEXED ATTACHMENTS FOR COMPLETE SUPPORTING FACTS

## F.  REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

REFER ANNEXED COMPLANT

Dated: 1/16/06                         Respectfully submitted:

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF COLUMBIA

CAUSE NO._____

WILLIE HAMPTON,

           Plaintiff,

v.

TUNICA COUNTY BOARD

OF SUPERVISORS, ET. AL.,

TUNICA COUNTY SHERIFF'S DEPARTMENT,

JEROME HUDSON,

JERRY L. ELLINGTON,

JOHN DOES 1-5,

JANE DOES 1-5,

           Defendants.

CIVIL RIGHTS COMPLAINT [42 USC § 1983]

JURY TRIAL DEMANDED

## I. NATURE OF THE CASE

1. The incidents on which plaintiff's lawsuit is based occurred as a result of malicious, deliberate, intentional, reckless and negligent misconduct by the Tunica County Sheriff's Department, and its agents, as named and/or described above, before during, and after the execution of a

[1]

search warrant which was issued in good faith by the
Honorable Tunica County Justice Ted Emmanuel. The
administrative record will reveal that Tunica County,
Mississippi former agents Sheriff Jerry Ellington, and former
Tunica County Deputy Sheriff Jerome Hudson conspired with
other known and unknown Tunica County officials to deprive
plaintiff of his Constitutionally-protected rights as
hereinafter divulged.

2.       Plaintiff Willie Hampton, by pro-se representation,
brings this action to obtain redress for the deprivation and
conspiracy to deprive Plaintiff of his federally-protected
rights as hereinafter alleged, and for intentional infliction
of deprivation of real and personal property and choices in
action.

## II. JURISDICTION

3. This Court has subject-matter jurisdiction pursuant to (a)
28 U.S.C. § 1331, because the case arises under the
Constitution and laws of the United States; (b) 28 U.S.C. §
1343, because this action seeks redress and damages for
violation of U.S.C. §§ 1982, 1983 & 1986, in particular, the
due process and equal protection provisions of the United
States Constitution, including the rights protected in the
Fifth and Fourteenth Amendments thereof; and (c) 28 U.S.C. §
1232, since there is diversity of citizenship and this is a
civil action in excess of $75.000.00 (See, Thomas J. Amerson

[2]

v. American Nat'l Ins. Co. Et Al., 117 Fed. Appx. 360; 2004
U.S. App. LEXIS 26133, NO. 04-60558 FIFTH CIRCUIT, Dec. 16,
2004

### III. JURISDICTIONAL STATEMENT
Timeliness of Filing [Tolling]

4. It is well-settled that a claim and/or cause of action
against a (state) entity should accrue when the plaintiff is
in possession of critical facts that he or she has been
injured and its cause...[o]nce the
plaintiff has the above-referenced knowledge, he or she is in
a position to investigate and determine whether a cause of
action exists.

5.      The time herein is tolled in respect to the above-
below causes of action as of May 4th, 2005 (the date judgment
of nolle proseque was entered in respect to the case in
question).

### IV. THE PARTIES

6. Plaintiff Willie Hampton (hereinafter "Hampton") is a
citizen of the state of California and now, a prisoner
litigant. Prior to Hampton's incarceration, Hampton resided
in Oakland, California.

7. Defendants are as follows: the Tunica County Sheriff's Department located in Tunica County, Mississippi, defendant Jerry Ellington was sheriff of the same at the time incorporated claims arose, defendant County Board of Supervisors is the funding agency for the Tunica County Sheriff Department, whom may be served with process at the Tunica County Detention Center and the Chairman of the County Board of Supervisors, James Dunn; defendant Jerome Hudson was employed as a lieutenant deputy sheriff with the Tunica County Sheriff's Department during the time in which the incorporated claims arose.

    [A]ll defendants named herein are hereby sued in his/her/their official and individual capacity.

The facts are as follows:

a. On or about 08/24/1999, Hampton was arrested in the County of Tunica, Mississippi by then Deputy Sheriff Jerome Hudson (hereinafter "Hudson"). Hampton was subsequently charged with "disorderly conduct".

b. At the time of Hampton's arrest, Hampton was driving one 1999 Ford Expedition (Burgandy/Tan Trim) [Vehicle Identification No. 1FMPU18L7XLA2109].

c. At the time of said arrest, it is alleged that the above-referenced vehicle was towed to the Tunica County Sheriff's Impound. Hudson averred that a subsequent National Crime Information Computer (NCIC) check revealed that said

[4]

conveyance had been reported stolen in Walnut Creek, California.

d. Hampton was not charged with grand theft auto and/or otherwise detained for any offenses arising from the alleged vehicle theft; however, by virtue of implacement on the NCIC computer data base the above-referenced vehicle was never returned to Hampton.

e. Approximately seven months later, on or about 03/20/2000, based upon the alleged intelligence upon an alleged drug buy sold to a crack-addicted African American woman, one Ruby Gooden, hereinafter "CI", Tunica County law enforcement authorities, led by Hudson, executed a search warrant upon the home of Hampton's biological sister.

f. Based upon allegations of Hudson that (7) grams of a contraband substance "cocaine" was found at Hampton's sister's residence, Hudson then petitioned Circuit Court Justice Ted Emanuel for a search warrant for a garage/property located on Hickory Street and Edwards Avenue, Tunica County MS which Hudson alleged was owned by Hampton.

g. Judge Emanuel, acting in good faith, issued the warrant and Hudson, acting under the color of law/color of authority executed the same.

[5]

h. It was generally alleged by Hudson, as well as other law enforcement agents that upon execution of the search warrant on March 21, 2000, the following vehicles were discovered inside the Hickory Street garage: one 1999 Ford Expedition [VIN# 1FMPU18J7XLA82109], one pickup truck belonging to a Mr. Raymond Barker, one Mercury Cougar and two Ford Mustangs. It is important to note that all vehicles were alleged to have been in close proximity of the 1999 Ford Expedition; it is also important to note, the Hickory Street garage was a three car garage.

i. Tunica County law enforcement authorities, namely Hudson, alleged during the "execution" of the search warrant that the 1999 Ford Expedition, supra concealed a large quantity of a contraband substance, 7.5 pounds of cocaine.

j. Hudson, acting under the color of state law/color of authority, unlawfully seized all of the above-entitled property with the exception of "one pickup truck" (Barker's vehicle) which was alleged to have been in said garage along with the 1999 Ford Expedition.

k. It was based upon the above-referenced allegations that the State of Mississippi petitioned for forfeiture of the above-stated conveyances, along with $355.00 U.S. Currency.

l. On or about, March 24, 2000 Tunica County law enforcement authorities, namely Hudson, executed a federal district court warrant upon Hampton upon the basis that all local drug charges had been dismissed and subsequently transported

[6]

Hampton to the federal venue.

m. After the above alleged events transpired, and only
subsequent to both zealous judicial & administrative
investigation(s) regarding the incorporated events, Hampton
soon discovered that:

i. That Hudson, at all times material, acting under color of
law/color of authority, had conspired with other agents to
deprive him of Constitutionally protected rights;

ii. That Hudson, at all times material, acting under color of
law/color of authority, had falsified certain Tunica County
Sheriff Department records relating to Hampton's cause;

iii. That Hudson, at all times material, acting under color
of law/color of authority, had confiscated from Hampton on
08/24/99 one 1999 Ford Expedition, then unlawfully
intercepted the same 1999 Ford Expedition from the Tunica
County Sheriff's Impound for personal gain;

iv. That Hudson, at all times material, acting under color of
law/color of authority, deprived Hampton of liberty and
property based upon patently false allegations that the above-
stated 1999 Ford Expedition was sequestered in the Hickory
Street garage on March 21, 2000 bearing a large quantity of
contraband narcotics, when in fact, the Tunica County
Sheriff's Impound administrative records indicate no evidence

[7]

of one 1999 Ford Expedition bearing the VIN# 1FMPU18L7XLA2109 was SEIZED on March 21, 2000 and/or being otherwise housed in the Tunica County Sheriff's Department Impound;

v. That Hudson, at all times material, acting under color of law/color of authority, deprived Hampton of liberty and property based upon patently false allegations that as of 03/27/2000, Tunica County had dismissed Local Charges which were purportedly filed against Hampton;

vi. That the defendants named in this civil action deprived Hampton of his rights to due process under the Fifth and Fourteenth Amendments by unlawfully transporting Hampton to federal venue for prosecution purposes without completion of its own proceedings, thus propagating "interference", and factually depriving Hampton of right to a speedy trial;

vii. That Hudson, at all times material, acting under color of law/color of authority, deprived Hampton of liberty property and fair proceedings by unlawfully concealing crucial evidence, (one 1999 Ford Expedition);

viii. That Hudson, at all times material, acting under color of law/color of authority, engaged in intentional negligence, dishonesty, and ultra vires acts which resulted in failure to comply with the dictates incorporated within the Hon. Ted Emanuel's good faith issuance of the Hickory Street search warrant.

[8]

ix. Ellington, conspired with Hudson to deprive Hampton of Constitutionally-protected interest in both real and personal property as Ellington was well aware of Hudson's dishonesty and conduct unbecoming an officer (falsification of official records) yet failed to take the steps necessary to protect Hampton's Constitutional rights.

COUNT [I]

DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES (42 U.S.C. § 1983)

7. Hampton incorporates by reference paragraphs and subsections 1 through 6, a through m, and i through ix as though fully set forth.

8. Hampton is entitled to the equal protection of the laws under the Fifth and Fourteenth Articles of Amendment of the National Constitution.

9. Defendants, as representatives in and for the great state of Mississippi, acting under the color of law, color of authority, discriminated against Hampton by confiscating his 1999 Ford Expedition [VIN# 1FMPU18J7XLA82109] on August 24, 1999 and thereafter deposed that said vehicle had been reported stolen to the Walnut creek, Californian authorities. (See Attachment A)

[9]

10. Further, defendants failed to lawfully return/release said 1999 Ford Expedition to either Hampton, and/or the alleged rightful owners as demonstrated by the annexed administrative records; thus defendants unlawfully diverted, concealed the true status/whereabouts of said 1999 Ford Expedition from Hampton and the judicial arena. (See Attachment B)

11. The administrative record reveal that the defendants named in this civil action failed to return allegedly stolen property to its rightful owners.

12. The administrative record reveal that the defendants named in this civil action failed to lawfully follow procedures regarding the preservation of crucial physical evidence (one 1999 Ford Expedition) for potential trial evidence. Moreover, there is no physical administrative record revealing the existence of a 1999 Ford Expedition [VIN# 1FMPU18J7XLA82109] which is the fundamental basis and support of various court actions both civil and criminal.

13. Hampton, as a citizen of California, a U.S. citizen and veteran of the U.S. armed forces was entitled to due process protection of freedom from arbitrary police action which jeopardize his property interest which was evident in the state of Mississippi. Further, Hampton should not have been subjected to service of process in and on behalf of property to which he was not the lawful registered owner named in the Chancery office's records and files. (See, Attachment C).

[10]

14. Indeed, Hampton should not have been subjected to deprivation of real and personal property based upon fundamental allegations which could not/cannot be substantiated by the Tunica County Sheriff's Impound administrative record. To be sure, defendants' failure to now come forward, and produce a true, correct and not misleading copy of the Tunica County Sheriff Department Impound administrative record reflecting the existence of one 1999 Ford Expedition in said Impound between the dates August 24, 1999 and March 22, 2000 will substantiate all allegations incorporated herein.

15. Hampton, herein incorporates as a strong colorable prima facie showing, the following affidavits and depositions in full support of the allegations regarding one 1999 Ford Expedition [VIN# 1FMPU18J7XLA82109]:

a. Deposition of William Lewis, Tunica County Property Room Supervisor (Attachment D)

b. Deposition of Adrinia Lewis, Tunica County Narcotics Officer

(Attachment E)

c. Affidavit of Sharon G. Reynolds, Clerk of Tunica County Circuit Court

(Attachment F)

16. The above-described actions of the defendants at large were conducted under the color of law/color of authority and

[11]

color of the state law as Tunica County law enforcement
officials; it is factual that said ultra vires actions in
nature, deprived Hampton of federal equal protection and due
process rights guaranteed by the Fifth and Fourteenth
Amendments of the United States Constitution, and made
actionable by 42 U.S.C. § 1983 (The Civil Rights Act).

COUNT [II]

CONSPIRACY TO DEPRIVE PERSONS OF EQUAL PROTECTION OF THE LAWS
42 U.S.C. §1985

17. Hampton incorporates by reference paragraphs 1 through
16, subsections a through m, and i through ix as though fully
set forth.

18. As aforestated in subsection [g], the Hon. Judge Ted
Emanuel issued forth a search warrant March 21, 2000 for a
garage on Hickory Street and Edwards Avenue with specific
instructions that all seized items be cataloged with the
Tunica County Sheriff's Department (as any seized items would
be of great evidentiary value in subsequent prosecution).
Comparison of the Property Evidence List opposed to the
petition for forfeiture (and Attachments D & E) reflect that
defendants failed to adhere to the warrant instructions and
failed to "cataloged" items which were not lawfully SEIZED
according to state law. The defendants knew or should have
known that failure to follow the warrant instructions

[12]

(failure to catalog) handed down by the Hon. Judge Emanuel would deprive Hampton of his ability to confront either the evidence; moreover, defendants knew or should have known, that said failure to adhere to the search warrant specific instructions would result in the unlawful SEIZURE of the defendant property.

19. More importantly, defendants violated Hampton's federally protected rights to due process of law as said defendants have unlawfully seized, forfeited and deposed of Hampton's real and personal property before entry of judgment of forfeiture in case number 2000-00080.

20. The foregoing inference can be made from recourse to the annexed Depositions herein, the records on file with the Tunica County Circuit Court and the unescapable fact said defendants [cannot] produce [ANY] factual evidence to [REBUT] the allegations incorporated within this redress of grievances.

21.The above-described actions of the defendants at large were conducted under the color of law/color of authority and color of the state law as Tunica County law enforcement officials; it is factual that said ultra vires actions in nature, deprived Hampton of federal equal protection and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and made actionable by 42 U.S.C. § 1983 (The Civil Rights Act).

[13]

COUNT [III]

CONSPIRACY AGAINST RIGHT TO EQUAL PROTECTION AND FIFTH
AMENDMENT PROTECTION TO DUE PROCESS OF LAW

22. Hampton incorporates by reference ¶'s 1 through 22,
[sub]section i through ix, and a through m as though fully
set forth.

23. Hampton avers in this claim (as the records on file with
the Circuit Court support) defendants did conspire under
color of state law/color of authority to deprive him of his
federally protected Constitutional rights to equal protection
and due process.

24. On or around 3/24/00, Hampton was allegedly being
detained by Tunica County law enforcement officials for
alleged drug law violations. On or about 3/27/00, Hampton was
abruptly transported and released to federal authorities
under process of service of warrant of arrest by Hudson. The
return of the federal warrant reflects that the
receiving/arresting officer "James Rambo" (hereinafter
"Rambo", whom proceeded in accordance with law and good faith
at all times material) recorded that the basis of Hampton's
arrest gravitated around the alleged fact that Hampton's
Local Charges had been "dismissed". (See, Attachment G).

25. Hudson, acting under color of state law/color of authority, had unlawfully transported and released Hampton to federal authorities. To be sure, the allegations of "dismissal of local charges" incorporated in Attachment G are flatly rebutted by the JUSTICE COURT OF TUNICA COUNTY, MISSISSIPPI's order of NOLLE PROSEQUE dated in and for the record May 4th, 2004 by typographical error but which was factually entered May 5th 2005 (See, Attachment H, and Attachment I, Certified Abstract of Court Record).

26. Attachment(s) G, H and I, as certified true and correct copies of the Court Record establish (b) no local charges had been dismissed on 3/27/2000 as reflected in the federal warrant as related to Rambo by Hudson, and that (b) Hudson, acting in tandem under color of state law/color of authority with other defendants conspired to deprive Hampton of equal protection and due process of law by unlawfully transporting and releasing Hampton to federal authorities thus violating Hampton's right to a speedy trial in the Local Venue of Tunica County, Mississippi under case numbers 66814, 66815, 66816.

27. Any potential jurorer, acting reasonably, will freely acknowledge that the laws of local state government cannot dismiss the exact same felony charges upon two separate points in time: 3/27/00 (Refer Attachment G) and 3/4/2000 (Refer Attachments H & I).

[15]

28. The above-referenced conveyance of erroneous information/data re Hampton's alleged local drug charges, as utter by Hudson, are indicative of his participation in the conspiracy to deprive Hampton of his federally-protected rights. In addition to the above, Hudson had falsified documentation (records) alleging that one Ruby Gooden (hereinafter "Gooden") was in the Federal Witness Protection Program when in fact Gooden was being unlawfully held by Hudson to illicit coerced testimony against Hampton at his federal proceedings; to be sure, both Hudson and Ellington were well-aware of the low probability that Gooden, as a severely crack-addicted African American woman, would appear under her own power at the Hampton's federal trial. Here are the facts as relate to Hudson's conspiracy against Hampton via the utilization of Gooden's presence:

* Gooden was scheduled to testify for the federal government against Hampton;

* Gooden was unlawfully detained in local custody prior to Hampton's federal proceedings;

* Gooden was released immediately [after] her testimony was adduced/coerced at Hampton's federal proceedings;

* Gooden was unlawfully withheld under false pretenses postulated through falsified documentation which was presented by Hudson, averring that Gooden had been sequestered within the Federal Witness Protection Program. More disturbingly, the defendants, cognizant of Hudson's above-styled ultra vires actions, enjoined and conspired

[16]

therein to deprive Hampton of his due process and equal
protection rights under the Constitution.

29. Depositions on file with the Clerk of the Court for the
United States District Court, Northern District of
Mississippi (Cause No. 2:01CV296-EMB) reflect the defendants'
awareness of Hudson's dishonest nature, ultra vires actions
and co-conspiratorial participation in Hudson's plan, trick,
scheme and artifice to deprive Hampton of his federally
protected rights to due process and equal protection of law.
The following are running excerpts of the above-referenced
depositions which demonstrate Hudson's corrupt behavior and
defendants' aiding and abetting of same:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV296-EMB

Q.What factors do you consider in deciding what level of
discipline you are going to apply?

A. I consider a lot of factors when I;m trying to inflict
discipline on personnel: the effect it has on the community
and overall is what effect it has on the department, the
department as a whole.

        I have to take all that into consideration because I
don't believe in firing them because everybody need their
job. That's a last resort for me. If I fire somebody, then
that's an extreme usually.

[17]

Q. Well, obviously, you fired Lieutenant Hudson. Why did you fire him as opposed to issuing some lesser form of discipline?

A. Because falsification of records is a serious offense and it's kind of hard to justify that. And I don't see how I can pull that back and say, "You go back and change that and do it another way." He may go back and be dishonest again. (ELLINGTON DEPOSITION, (Dep. pgs. 40 & 41) ATTACHMENT J)

30. The above-referenced Attachment J illustrates (a) Hudson's termination for falsification of records and (b) Ellington's knowledge of the same.

31. Further Depositions of Ellington reveal that Hudson's falsification of records were motivated by the conspiracy stated herein to deprive Hampton of due process and equal protection of the laws, as said conspiracy involved the unlawful detention of Gooden to assure production at Hampton's federal proceedings and to adduce/coerce testimony thereto:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV296-EMB

[18]

Q. Let me hand you a copy of the October 30, 2000, memo from Lieutenant Jerome Hudson to Lieutenant W. C. Eskridge, jail administrator.

My understanding is that this is the document that you have indicated that you base the discharge of Jerome Hudson on; is that correct, sir?

A. Yes, ma'am.

Q. Is that the document that you contend that Jerome Hudson falsified?

A. YES, MA'AM.

(ELLINGTON DEPOSITION, (Dep. pgs. 42 & 43) ATTACHMENT J, and MEMORANDUM HEREINAFTER KNOWN AS "DOCUMENT" ATTACHMENT K).

32. Further Deposition(s) of Ellington revealed that the memorandum at Attachment J, reveals (a) Ellington's foreknowledge of Hudson's falsification of documents, (b) Ellington's foreknowledge that Hudson was active as "lead" investigator in Hampton's case, and (c) Ellington's foreknowledge that Gooden was being jailed unlawfully by Hudson as a potential witness for the federal prosecution:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV296-EMB

[19]

Q. Did Lieutenant Eskridge, the jail administrator, indicate to you there was any problem with this document at the time that he gave it to you?

A. No, uh-uh, not at first.

Q. This document refers to a Ruby Gooden.
   Were you at that time familiar with who Ruby Gooden was?

A. Yes, ma'am.

Q. And who did you know her to be?

A. An inmate in the jail on a narcotics charge.

Q. Did you also understand her to be a witness in any pending cases?

A. Yes ma'am.

Q. What case was pending at the time that you believed her to be a witness in?

A. I think it was Willie Hampton, I believe, and the Bowens case, I believe that's what case she was a witness in.

Q. Tell me a little bit about the Hampton/Bowen case, what was that about.

[20]

A. The Hampton was a case that narcotics worked on here and discovered that he had a large amount of drugs that was confiscated in town. The value of those drugs was somewhere around a million and a half, I guess, which was a great big case for Tunica County.

Q. Was Lieutenant Hudson involved in that case?

A. Yes ma'am.

Q. What was his involvement, to your knowledge?

A. I think he was lead investigator on the case.
DEPOSITION OF JERRY L. ELLINGTON (Dep. pgs. 45, 46 & 47)

CONTINUED DEPOSITION OF JERRY L. ELLINGTON CASE NO. 2:01CV296-EMB

Q. You knew that Ruby Gooden was in the Tunica County jail, correct?

A. Yes ma'am.

Q. When did you first come to the conclusion that there was something false about this document?

[21]

A. I guess it was about a week after it was brought to my office and I looked at it, and I -- the question in my mind was, a Federal Witness Protection Program on my letterhead, how in the world is this possible and me, being sheriff, not even knowing anything about this program. This can't be. How in the world can this be in this jail and I'm sheriff and don;t know there's a Federal Witness Protection Program here. There's something wrong with this.

Q. And who did you contact?

A. Chad Lamar at the attorney general's office in Oxford, to verify whether or  not they knew anything about a Federal Witness Protection Program.

Q. And what did--

A. His response was, "Yeah, we know something about a Federal Witness Protection Program. But if we were going to do one, sheriff, we'd have that person over here or somewhere, not in your jail."

'I said, "well, something has to happen here, Chad, because this person is being held in the jail, and its going to get us in some legalities if we don't do something with her without some kind of paperwork from y'all saying that she's under the Federal Witness Protection Program. Not my paper, because I've got some document here on my desk saying we've

[22]

got her under the Federal Witness Protection -- well, Federal
Witness Program, and I don't even have one. So you tell me
what I need do."

DEPOSITIONS OF JERRY L. ELLINGTON (Dep. pgs. 48 & 49)


DEPOSITIONS OF JERRY L. ELLINGTON, CASE NO. 2:01CV296-EMB
CONTINUED


Q. You indicated that you recalled seeing this memo in
sometime in November, is that right?


A.      Right.


Q. And you fired Lieutenant Hudson when?


A. After the case was over in February, I think, of the
following year.


Q.   So you waited until after --


A. The Hampton case.


Q. --Hampton and Bowen were convicted; is that right?


A. Yes Ma'am.


Q. And why is that, Sheriff?

[23]

A. Didn't want to cause any interference in the case or disruption in the case by terminating the guy that was supposedly head of the investigation.

DEPOSITIONS OF JERRY L. ELLINGTON, (Dep. pg. 54)

[End of DEPOSITIONS OF ELLINGTON]


;33. The above-entitled Depositions of Ellington demonstrate knowledge aforethought of Hudson's ultra vires actions and thus Ellington's time and opportunity to prevent the same. Thus, claim as to 42 §§ 1983, 1986 proper. The above-described actions of the defendants at large were conducted under the color of law/color of authority and color of the state law as Tunica County law enforcement officials; it is factual that said ultra vires actions in nature, deprived Hampton of federal equal protection and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and made actionable by all subsections cited under 42 U.S.C. (The Civil Rights Act).


34. It well settled that, "Denials of equal protection by municipal entity or any other person acting under color of state law are actionable under § 1983." Murell v. School Dist. No. 1, Denver, Colo., 186 F.3d 1238 (10th Cir).


35. The above-entitled actions of the defendants were so outrageous in character, and in degree, as to go beyond all possible bounds of explanation thus, are to be regarded as atrocious and utterly intolerable in a civilized society.

[24]

36.      The Deposing of Ellington reveals a sworn law
enforcement official conspiring with his deputy to deprive
Hampton of his civil rights (See, annexed Depositions at
Attachment J).

37. Lastly, the Deposing of Ellington at Attachment J,
reveals a recorded bias and proclivity to sorely abuse the
civil rights of persons charged with narcotics offense:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV296-EMB

A: I hate drug folks. I don't like them. Granted, I married
one, but you know, that's a different issue. Folks that sell
drugs, to me, is a problem for any community, and I wanted to
see them rid of it. I want to get rid of them if there's any
way possible. We can dump them all in the ocean, but you
know, that ain't realistic.

(Attachment J, Dep. pgs. 73 & 74)

38. Being lawfully empowered as a state official by the great
state of Mississippi, the defendants knew or should have
known that all ultra vires actions, omissions and behavior
incorporated herein deprived Hampton of constitutionally
protected civil rights. Surely there is no legal precedent
for a trusted state official to engage in the conspiracy of
rights of one whom which he or she has sworn under oath to
protect. Unfortunately, that has transpired in Tunica County.

[25]

RELIEF REQUESTED

WHEREFORE, Hampton request the following relief:

a. COUNT [I] against defendants for compensatory damages of approximately $300,000,000.00; punitive damages for defendant's deprivation of Constitutional rights and privileges;

b. Count [ii] punitive damages of approximately $100,000,000.00 for conspiracy to deprive persons of equal protection of the laws;

c. Count [III] judgement against defendants jointly and severally for compensatory damages of $200,000,000.00; and the costs of this action and any applicable attorneys fees; nominal damages, and such other and further relief as the Court may deem proper.

WILLIE HAMPTON

79948-011

U.S.P. VICTORVILLE

P.O. BOX 5500

ADELANTO, CA 92301

[26]

Case# No._____    CERTIFICATE OF SERVICE

WILLIE HAMPTON hereby certify that I served a true and
correct copy of the following:

CIVIL RIGHTS COMPLAINT [42 USC § 1983]

Which is deemed filed at the time it was delivered to prison
authoriteis for forwarding to the court, Houstion v. Lack,
101 L.ed 245 (1988), upon the court and parties to litigation
and or his/her attorney(s) of record, by placing same in a
sealed, postage prepaid envelop addressed to:

OFFICE OF THE UNITED STATES DISTRICT COURT/CLERK
333 Constitution Avenue, N.W.
Washington, D.C.   20001

and deposited same in the United States Postal Mail at the
United States Penitentiary, Victorville, California on the
_15_th, day of_January_ 2006.

x_____

Willie Hampton/pro-se

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF COLUMBIA

CAUSE NO:_____

[ EXHIBIT"S [A] to [K]