UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF COLUMBIA


[CAUSE NO.1:06CV00158]


WILLIE HAMPTON,

Plaintiff,

v.

TUNICA COUNTY BOARD OF SUPERVISORS, ET. AL.,

TUNICA COUNTY SHERIFF'S DEPARTMENT,

JEROME HUDSON,

JERRY ELLINGTON,

JOHN DOES 1-5,

JANE DOES 1-5,

Defendants.


FIRST AMENDED COMPLAINT [42 USC & 1983]

**RECEIVED**

FEB 2 4 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I. NATURE OF THE CASE

1. The incidents on which plaintiff's lawsuit is based

occurred as a result of malicious, deliberate, intentional,

reckless and negligent misconduct by the Tunica County

Sheriff's Department, and its agents, as named and/or

described above, before during, and after the execution of a

[1]

search warrant which was issued in good faith by the
Honorable Tunica County Justice Ted Emmanuel. The
administrative record will reveal that Tunica County,
Mississippi former agents Sheriff Jerry Ellington, and former
Tunica County Deputy Sheriff Jerome Hudson conspired with
other known and unknown Tunica County Officials to deprive
Plaintiff of his Constitutionally-Protected-Rights as
hereinafter divulged.

2. Plaintiff Willie Hampton, by pro-se representation, brings
this action to obtain redress for the deprivation and
conspiracy to deprive Plaintiff of his Federally-Protected-
Rights as gereinafter alleged, and for intentional infliction
of deprivation of real and personal property and choices in
action.

## II. JURISDICTION

3. This Court has subject-matter jurisdiction pursuant to (a)
28 U.S.C. & 1331, because the case arises under the
Constitution and laws of the United States; (b) 28 U.S.C. &
1343, because this action seeks redress and damages for
violation of U.S.C. §§ 1983 & 1986, in particular, the due
process and equal protection provisions of the United States
Constitution, including the rights protected in the Fifth and
Fourteenth Amendments thereof; and (c) 28 U.S.C. § 1232,
since there is diversity of citizenship and this is a civil
action in excess of $75.000.00 (See, Thomas J. Amerson

[2]

v. American Nat'l Ins. Co. Et Al., 117 Fed. Appx. 360; 2004
U.S. App. LEXIS 26133, NO. 04-60558 FIFTH CIRCUIT, Dec. 16,
2004.

### III. JURISDICTIONAL STATEMENT
### Timeliness of Filing [Tolling]

4. It is well-settled that a claim and/or cause of action
against a (state) entity should accure when the Plaintiff is
in possession of critical facts that he or she has been
injured and its cause... [o]nce the Plaintiff has the above-
referenced knowledge, he or she is in a position to
investigate and determine whether a cause of actiion exists.

5. The time herein is tolled in respet to the above-below
causes of action as of May 4th, 2004 (the date judgment of
nolle proseque was entered in respect to the case in
question).

### IV. THE PARTIES

6. Plaintiff Willie Hampton (hereinafter "Hampton") is a
citizen of the State of California and now, a prisoner
litigant. Prior toe Hampton's incarceration, Hampton resided
in Oakland, California.

7. Defendants are as follows: the Tunica County Sheriff's
Department located in Tunica County, Mississippi, Defendant
Jerry Ellington was sheriff of the same at the time

[3]

incorporated claims arose, Defendant County Board Of

Supervisors is the founding agency for the Tunica County

Sheriff Department, whom may be served with process at the

Tunica County Detention Center and the Chairman of the County

Board of Supervisors, James  Dunn; Defendant Jerome Hudson

was employed as a Lieutenant Deput Sheriff with the Tunica

County Sheriff's Department during the time in which the

incorporated calims arose.

 [A]ll defendants named herein are hereby sued in

his/her/their official and individual capacity.


The facts are as follows:

a. On or about 08/24/1999, Hampton was arrested in the County

of Tunica, Mississippi by then Deputy Sheriff Jerome Hudson

(hereinafter "Hudson"). Hampton was subsequently charged with

"disorderly conduct".


b. At the time of Hampton's arrest, Hampton was driving One

1999 Ford Expedition (Burgandy/Tan Trim) [Vehicle

Identification No. 1FMPUP18L7XLA2109].


c. At the time of said arrest, it is alleged that the above-

referenced vehicle was towed to the Tunica County Sheriff's

Impound. Hudson averred that a subsequent National Crime

Information Computer (NCIC) check revealed that said

conveyance had been reported stolen in Walnut Creek,

California.

d. Hampton was not charged with grand theft auto and/or
otherwise detained for any offenses arising from the alleged
vehicle theft; however, by virture of implacement on the NCIC
computer data base the above-referenced vehicle was never
returned to Hampton.

e. Approximately seven months later, on or about 03/20/2000,
based upon the alleged intelligence upon an alleged drug buy
sold to a crack-addicted African American Woman, one Ruby
Gooden, hereinafter "CI", Tunica County law enforcement
authorities, led by Hudson, executed a search warrant upon
the home of Hampton's biological sister.

f. Based upon allegations of Hudson that (7) grams of a
contraband substance "cocaine" was found at Hampton's
sister's residence, Hudson then petitioned Circuit Court
Justice Ted Emanuel for a search warrant for a
garage/property located on Hickory Street and Edwards Avenue,
Tunica County MS which Hudson alleged was owned by Hampton.

g. Judge Emanuel, acting in good faith issued the warrant and
Hudson, acting under the color of law/color of authority
executed the same.

[5]

h. It was generally alleged  by Hudson, as well as other law enforcement agents that upon execution of the search warrant on March 21, 2000, the following vehicles were discovered inside the Hickory Street garage: one 1999 Ford Expedition [VIN# 1FMPU18L7XLA82109], one pickup truck belonging to a Mr. Raymond Barker, one Mercury Cougar and two Ford Mustangs. It is important to note that all vehicles were alleged to have been in close proximity of the 1999 Ford Expedition; it is also important to note, the Hickory Street garage was a three car garage.

i. Tunica County law enforcement authorities,  namely Hudson, alleged during the "execution" of the search warrant that the 1999 Ford Expedition, supra concealed a large quantity of a contraband substance, 7.5 pounds of cocaine.

j. Hudson, acting under the color of state law/color of authority, unlawfully seized all of the above-entitled property with the exception of "one pickup truck" (Barker's vehicle) which was alleged to have been in said garage along with the 1999 Ford Expedition.


k. It was based upon the above-referenced allegations that the State of Mississippi petitioned for forfeiture of the above-stated conveyances, along with $355.00 U.S. Currency.


l. One or about, March 24th, 2000 Tunica County law enforcement authorities, namely Hudson, executed a federal district court warrant upon Hampton, upon the basis that all local drug charges had been dismissed and subsequently transported                    [6]

Hampton to the federal venue.

m. After the above alleged events transpired, and only
subsequent to both zealous judicial & administrative
investigation(s) regarding the incorporated events, Hampton
soon discovered that:

i. That Hudson, at all times material, acting under color of
law/color of authority, had conspired with other agents to
deprive him of Constitutionally protected rights;

ii. That Hudson, at all times meterial, acting under color of
law/color of authority, had falsified certain Tunica County
Sheriff Department records relating to Hampton's cause;

iii. That Hudson, at all times material, acting under color
of law/color of authority, had confiscated from Hampton on
08/24/99 one 1999 Ford Expedition, then unlawfully
intercepted the same 1999 Ford Expedition from the Tunica
County Sheriff's Impound for personal gain;

iv. That Hudson, at all times material, acting under color of
law/color of authority, deprived Hampton of liberty and
property based upon patently false allegations that the above-
stated 1999 Ford Expedition was sequestered in the Hickory
Street garage on March 21, 2000 bearing a larage quantaity of
contraband natcotice,, when in fact, the Tunica County
Sheriff's Impound administrative records indicate no evidence

[7]

of one 1999 Ford Expedition bearing the VIN# 1FMPU18L7XLA2109
was SEIZED on March 21, 2000 and/or being otherwise housed in
the Tunica County Sheriff's Department Impound;

v. That Hudson, at all times material, acting under color of
law/color of authority, deprived Hampton of liberty and
property based upon patently false allegations that as of
03/27/2000, Tunica County had dismissed Local Charges which
were purportedly filed against Hampton;

vi. That the defendants named in this civil action deprived
Hampton of his rights to due process under the Fifth and
Fourteenth Amendments by unlawfully transporting Hampton to
federal venue for prosecution purposes without completion of
its own proceedings, thus propagating "interference", and
factually depriving Hampton of right to a speedy trial;

vii. That Hudson, at all times material, acting under color
of law/color of authority, deprived Hampton of liberty
property and fair proceedings by unlawfully concealing
crucial evidence, (one 1999 Ford Expedition);
viii. That Hudson, at all times material, acting under color
of law/color of authority, engaged in intentional negligence,
dishonesty, and ultra vires acts which resulted in failure to
comply with the dictates incorporated within the Hon. Ted
Emanuel's good faith issuance of the Hickory Street search
warrant.

[8]

ix. Ellignton, conspired with Hudson to deprive Hampton of
Constitutionally-peotected interest in both real and personal
property as Ellington was well aware of Hudson's dishonesty
and conduct unbecoming an officer (falsification of official
records) yet failed to take the steps necessary to protect
Hampton's Constitutional Rights.

COUNT [1]

DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES (42
U.S.C. § 1983)

7. Hampton incorporates by reference paragraphs and
subsections 1 through 6, a through, m, and i throgh 1x as
though fullly set forth.

8. Hampton is entitled to the equal protection of the laws
under the Fifth and Fourteenth Articles of Amendment  of the
National Constitution.

9. Defendants, as representatives in and for the great state
of Mississippi, acting under the color of law, color of
authority, discriminated against Hampton by confiscating his
1999 Ford Expedition [VIN# 1FMPU18L7XLA82109] on August 24,
1999 and thereafter deposed that said vehicle had been
reported stolen to the Walnut Creek, California authorities.
(See Attachment A)

10. Further, defendants failed to lawfully return/release
said 1999 Ford Expedition to either Hampton, and/or the
alleged rightful owners as demonstrated by the annexed
administrative records; thus defendants unlawfully diverted,
concealed the true status/whereabouts of said 1999 Ford
Expedition from Hampton and the judicial  arena. (See
Attachment B)

11. The administrative record reveal that the defendants
named in this civil action failed to return allegedly stolen
property to its rightful owners.

12. The administrative record reveal that the defendants
named in this civil action failed to lawfully follow
procedures regarding the preservation of crucial physical
evidence (one 1999 Ford Expedition) for potential trial
evidence. Moreover, there in no physical administrative
record revealing the  existence of a 1999 Ford Expedition
[VIN# 1FMPU18L7XLA82109] which is the fundamental basis and
support of various court actions both civil and criminal.

13. Hampton, as a citizen of California,, a U.S. citizen and
veteran of the U.S. armed forces was entitled to due process
protection of freedom from arbitrary police action which
jeopardize his property interest which was evident in the
state of Mississippi. Further, Hampton should not have been
subjected to service of process in and on behalf of property
to which he was not the lawful registered owner named in the
Chancery office's records and files. (See, Attachment C).

14. Indeed, Hampton should not have been subjected to
deprivation of real and personal property based upon
fundamental allegations which could not/cannot be
substantiated by the the Tunica County Sheriff's Impound
administrative record. To be sure, defendants, failure to now
come forward, and produce a true, correct and not misleading
copy of the Tunica County Sheriff Department Impound
administrative record reflecting the existence of one 1999
Ford Expedition in said Impound between the dates August
24th, 1999 and March 22th, 2000 will substantiate all
allegations incorporated herein.

15. Hampton, herein incorporates as a strong colorable prima
facie showing, the following affidavits and depositions in
full support of the allegations regarding one 1999  Ford
Expedition [VIN# 1FMPU18L7XLA82109]:

a. Deposition of William Lewis, Tunica County Property
Supervisor (Attachment D)
b. Deposition of Adrinia Lewis, Tunica County Narcotics
Officer
(Attachment E)
c. Affidavit of Sharon G. Reynolds, Clerk of Tunica County
Circuit Court
(Attachment F)
16. The above-described actions of the defendants at large
were conducted under the color of law/color of authority and
color of the state law as Tunica County law enforcement

[11]

officials; it is factual that said ultra vires actions in nature, deprived Hampton of federal equal protection and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and made actiionable by 42 U.S.C. § 1983 (THE CIVIL RIGHTS ACT).

COUNT [II]

CONSPIRACY TO DEPRIVE PERSONS OF EQUAL PROTECTION OF THE LAWS 42 U.S.C. § 1983

17. Hampton incorporates by reference paragraphs 1 through 16, subsections a through m, and i through ix as though fully set forth.

18. As aforestated in subsection [g], the Hon. Judge Ted Emanuel issued forth a search warrant March 21th, 2000 for a garage on Hickory Street and Edwards Avenue with specific instructions that all seized items be cataloged with the Tunica County Sheriff's Department (as any seized itiems would be of great evidentiary value in subsequent prosecution).

Comparison of the Property Evidence List opposed to the petition for forfeiture (and Attachments D & E) reflect that defendants failed to adhere to the warrant instructions and failed to "cataloged" items which were not lawfully SEIZED according to state law. The defendants knew of should have known that failure to follow the warrant instructions

[12]

(failure to catalog) handed down by the Hon. Judge Emanuel would deprive Hampton of his ability to confront either the evidence; moreover, defendants property.

19. More importantly, defendants violated Hampton's federally protected rights to due process of law as said defendants have unlawfully seized, forfeited and deposed of Hampton's real and personal property before entry of judgment of forfeiture in case number 2000-00080.

20. The foregoing inference can be made from recourse to annexed Depositions herein, the records on file with the Tunica County Circuit Court and the unescapable fact said defendants [cannot] produce [ANY] factual evidence to [REBUT] the allegations incorporated within this redress of grievances.

21. The above-described actions of the defendants at large were conducted under the color of law/color of authority and color of the state law as Tunica County law enforcement officials; it is factual that said ultra vires actions in nature, deprived Hampton of federal equal protection and due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, and made actionable by 42 U.S.C. § 1983 (THE CIVIL RIGHTS ACT).

[13]

COUNT [III]

CONSPIRACY AGAINST RIGHT TO EQUAL PROTECTION AND FIFTH
AMENDMENT PROTECTION TO DUE PROCESS OF LAW

22. Hampton incorporates by reference ¶'s 1 through 22,
[sub]section i through ix, and a through m as though fully
set forth.

23. Hampton avers in the claim (as the records on file with
the Circuit Court support) defendants did conspire under
color of state law/color of authority to deprive him of his
federally protected Constitutional rights to equal protection
and due process.

24. On or around 3/24/00, Hampton was allegedly being
detained by Tunica County law enforcement officials for
alleged drug law violations. On or about 3/27/00, Hampton was
abruptly transported and released to federal authorities
under process of service of warrant of arrest by Hudson. The
return of the federal warrant reflects that the
receiving/arresting officer "James Rambo" (hereinafter
"Rambo", whom proceeded in accordance with law and good faith
at all times material) recorded that the basis of Hampton's
arrest gravitated around the alleged fact that Hampton's
Local Charges had been "dismissed". (See, Attachment G).

25. Hudson, acting under color of state law/color of
authority, had unlawfully transported and released Hampton to
federal authorities. To be sure, the allegations of
"dismissal of local charges" incorporated in Attachment G are
flatly rebutted by the JUSTICE COURT OF TUNICA COUNTY,
MISSISSIPPI's order of NOLLE PROSEQUE dated in and for the
record May 4th, 2004  but which was factually entered May 5th
2005 (See, Attachment H, and Attachment I, Certified Abstract
of Court Record).

26. Attachment(s) G, H and I, as certified true and correct
copies of the Court Record establish (b) no local charges had
been dismissed on 3/27/2000 as reflected in the federal
warrant as related to Rambo by Hudson, and that (b) Hudson,
acting in tandem under color of state law/color of authority
with other defendants conspired to deprive Hampton of equal
protection and due process of law by unlawfully transporting
and releasing Hampton to federal authorities thus violating
Hampton's right to a speedy trial in the Local Venue of
Tunica County, Mississippi under case numbers 66814, 66815,
66816.

27. Any potential jurorer, acting reasonably, will freely
acknowledge that the laws of local state government cannot
dismiss the exact same felony charges upon two separate
points in time: 3/27/00 (Refer Attachment G) and 3/24/2000
(Refer Attachments H & I).

[15]

28. The above-referenced conveyance of erroneous information/data re Hampton's alleged local drug charges, as utter by Hudson, are indicative of his participation in the conspiracy to deprive Hampton of his federally-protected rights. In addition to the above, Hudson had falsified documentation (records) alleging that one Ruby Gooden (hereinafter "Gooden") was in the Federal Witness Protection Program when in fact Gooden was being unlawfully held by Hudson to illicit coerced testimony against Hampton at his federal proceedings; to be sure, both Hudson and Ellington were well-aware of the low probability that Gooden, as a severely crack-addicted African American woman, would appear under her own power at the Hampton's federal trial. Here are the facts as relate to Hudson's conspiracy against Hampton via the utilization of Gooden's presence:

* Gooden was scheduled to testify for the federal government against Hampton;
* Gooden was unlawfully detained in local custody prior to Hampton's federal proceedings;
* Gooden was released immediately [after] her testimony was adduced/coerced at Hampton's federal proceedings;
* Gooden was unlawfully withheld under false pretenses postulated through falsified documentation which was presented by Hudson, averring that Gooden had been sequestered within the Federal Witness Protection Program. More disturbingly, the defendants, cognizant of Hudson's above-styled ultra vires actions, enjoined and conspired

[16]

therein to deprive Hampton of his due process and equal protection rights under the Constitution.

29. Depositions on file with the Clerk of the Court for the United States District Court, Northern District of Mississippi (Cause No. 2:01CV00206-WAP) reflect the defendants' awareness of Hudson's dishonest nature, ultra vires actions and co-conspiratorial participation in Hudson's plan, trick, scheme and artifice to deprive Hampton of his federally protected rights to due process and equal protection of law. The following are running excerpts of the above-referenced depositions which demonstrate Hudson's corrupt behavior and defendants' aiding and abetting of same:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV00206-WAP

Q.What factors do you consider in deciding what level of discipline you are going to apply?

A. I consider a lot of factors when I'm trying to inflict discipline on personnel: the effect it has on the community and overall is what effect it has on the department, the department as a whole.
 I have to take all that into consideration because I don't believe in firing them because everybody need their job. That's a last resort for me. If I fire somebody, then that's an extreme usually.

[17]

Q. Well, obviously, you fired Lieutenant Hudson. Why did you fire him as opposed to issuing some lesser form of discipline?

A. Because falsification of records is a serious offense and it's kind of hard to justify that. And I don't see how I can pull that back and say, "You go back and change that and do it another way." He may go back and be dishonest again. (ELLINGTON DEPOSITION, (Dep. pgs. 40 & 41) ATTACHMENT J)

30. The above-referenced Attachment J illustrates (a) Hudson's termination for falsification of records and (b) Ellington's knowledge of the same.

31. Further Depositions of Ellington reveal that Hudson's falsification of records were motivated by the conspiracy stated herein to deprive Hampton of due process and equal protection of the laws, as said conspiracy involved the unlawful detention of Gooden to assure production at Hampton's federal proceedings and to adduce/coerce testimony thereto:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV00206-WAP

[18]

Q. Let me hand you a copy of the October 30, 2000, memo from Lieutenant Jerome Hudson to Lieutenant W. C. Eskridge, jail administrator.

My understanding is that this is the document that you have indicated that you base the discharge of Jerome Hudson on; is that correct, sir?

A. Yes, ma'am.

Q. Is that the document that you contend that Jerome Hudson falsified?

A. YES, MA'AM.

(ELLINGTON DEPOSITION, (Dep. pgs. 42 & 43) ATTACHMENT J, and MEMORANDUM HEREINAFTER KNOWN AS "DOCUMENT" ATTACHMENT K).

32. Further Deposition(s) of Ellington revealed that the memorandum at Attachment J, reveals (a) Ellington's foreknowledge of Hudson's falsification of documents, (b) Ellington's foreknowledge that Hudson was active as "lead" investigator in Hampton's case, and (c) Ellington's foreknowledge that Gooden was being jailed unlawfully by Hudson as a potential witness for the federal prosecution:

DEPOSITION OF JERRY L. ELLINGTON

CASE NO. 2:01CV00206-WAP

Q. Did Lieutenant Eskridge, the jail administrator, indicate to you there was any problem with this document at the time that he gave it to you?

A. No, uh-uh, not at first.

Q. This document refers to a Ruby Gooden.
   Were you at that time familiar with who Ruby Gooden was?

A. Yes, ma'am.

Q. And who did you know her to be?

A. An inmate in the jail on a narcotics charge.

Q. Did you also understand her to be a witness in any pending cases?

A. Yes ma'am.

Q. What case was pending at the time that you believed her to be a witness in?

A. I think it was Willie Hampton, I believe, and the Bowens case, I believe that's what case she was a witness in.

Q. Tell me a little bit about the Hampton/Bowen case, what was that about.

[20]

A. The Hampton was a case that narcotics worked on here and discovered that he had a large amount of drugs that was confiscated in town. The value of those drugs was somewhere around a million and a half, I guess, which was a great big case for Tunica County.

Q. Was Lieutenant Hudson involved in that case?

A. Yes ma'am.

Q. What was his involvement, to your knowledge?

A. I think he was lead investigator on the case.
DEPOSITION OF JERRY L. ELLINGTON (Dep. pgs. 45, 46 & 47)

CONTINUED DEPOSITION OF JERRY L. ELLINGTON CASE NO. 2:01CV00206-WAP

Q. You knew that Ruby Gooden was in the Tunica County jail, correct?

A. Yes ma'am.

Q. When did you first come to the conclusion that there was something false about this document?

[21]

A. I guess it was about a week after it was brought to my
office and I looked at it, and I-- the question in my mind
was, a Federal Witness Protection Program on my letter head,
how in the world is this possible and me, being sheriff, not
ever knowing anything about this program. This can's be. How
in the world can this be in this jail and I'm sheriff and
don't know there's a Federal Witness Protection Program here.
There's something wrong with this.

Q. And who did you contact?

A. Chad Lamar at the attorney general's office in Oxford, to
verify whether or not they knew anything about a Federal
Witness Protection Program.

Q. And what did--

A. His response was, "Yeah, we know something about a Federal
Witness Protection Program. But if we were going to do one,
sheriff, we'd have that person over here or somewhere, not in
your jail."

'I said, "well, something has  to happen here, Chad, because
this person is being held in  the jail, and its gong to get
us in some legalities if we don's do something with her
without some kind of paperwork from y'all saying that she's
under the Federal Witness Protection Program. Not my paper,
because I've got some document here on my desk saing we've

[22]

got her under the Federal Witness Portection--well, Federal
Witness Program, and I don't even have one. So you tell me
what I need do."
DEPOSITIONS OF JERRY L. ELLINGTON, (Dep. pgs. 48 & 49)


DEPOSITIOS OF JERRY L. ELLINGTON, CASE NO. 2:01CV00206-WAP
CONNTINUED


Q. You indicatedd that you recalled seeing this memo in
sometime in November, is that right?


A. Right.


Q. And you fired Lieutenant Hudson when?


A. After the case was over in February, I think, of the
following year.


Q. So you waited until after--


A. The Hampton case.


Q. --Hampton and Bowen were convicted; is that riight?


A. Yes Ma'am.


Q. And why is that,, Sheriff?


[23]

A. Didn't want to cause any interference in the case of
disruption in the case by terminating the guy that was
supposedly head of the investigatiion.
DEPOSITIONS OF JERRY L. ELLINGTON, (pg. 54)
[End of DEPOSITIONS OF ELLINGTON]

33. The above-entitled Depositions of Ellington demonstrate
knowledge aforethought of Hudson's ultra vires actions and
thus Ellington's time and opportunity to prevent the same.
Thus, claim as to 42 §§ 1983, 1986 proper. The above-
described actions of the defendants at large were conducted
under the color of law/color of authority and color of the
state law as Tunica County law enforcement officials; it is
factual that said ultra virse actions in nature, deprived
Hampton of federal equal protection and due process rights
guaranteed by the Fifth and Fourteenth Amendments of the
United States Constitution, and made actionable by all
subsections cited under 42 U.S.C. (THE CIVIL RIGHTS ACT).

34. It well settled that, "Denials of equal protection by
municipal entity or any other person acting under color of
state law are actionable under § 1983. "Murell v. School
Dist. No. 1, Denver, Colo., 186 F.3d 1238 (10th Cir).

35. The above-entitled actions of the defendants were so
outrageous in character, and in degree, as to go beyond all
possible bounds of explanation thus, are to be regarded as
atrocious and utterly intolerable in a civilized society.

[24]

36. The deposing of Ellington reveals a sworn law enforcement official conspiring with his deputy to deprive Hampton of his Civil Rights (See, annexed Depositions at Attachment J).

37. Lastly, the Deposing of Ellington at Attachment J, reveals a recorded bias and proclivity to sorely abuse the Civil Rights of persons charged with narcotice offense:

DEPOSITION OF JERRY L. ELLINGTON
CASE NO. 2:01CV00206-WAP

A. I hate drug folks. I don't like them. Granted, I married one, but you know, that's a different issue. Folks that sell drugs, to me, is a problem for any community, and I wanted to see them rid of it. I want to get rid of them if there's any way possible. We can dump them all in the ocean, but you know, that ain't reallistic.
(Attachment J, Dep. pgs. 73 & 74)

38. Being lawfully empowered as a state official by the great state of Mississipi, the defendants knew or should have known that all ultra vires actions, omissions and behavior incorporated herein deprived Hampton of constitutionally protected civil rights. surely there is no legal precedent for a trusted state official to engage in the conspiracy of rights of one whom which he or she has sworn under oath to protect. Unfortunately, that has transpired in Tunica County.

[25]

LEGAL CLAIM RE SUBSEQUENT EVENTS CONSTITUTING AN ONGOING
CONSPIRACY AGAINST PLAINTIFF'S CONSTITUTIONAL RIGHTS UNDER
COLOR OF LAW COLOR OF AUTHORITY

38. [A]ll events cited throughout ¶¶'s 1-37  have been part
and pacel of an ongoing conspiracy to violate Plaintiff's
Civil Rights under color of law/color of authority. As
demonstrated by defendants' recent depositions (See Exhibits)
said defendants had unlawfully seized, and continued to hold
Plaintiff's real and personal property.

39. Once Plaintiff became aware of the full extent of the
conspriacy against his civil rights  via defendants'
unlawfull actions executed under the color of law/color of
authority, said Plaintiff lawfully noticed/petitioned
defendants via the court, for the return of his unlawfully
forfeited property.
At this juncture, defendants did attempt to further devise a
trick/scheme of artifice and continued to engage in the above-
referenced conspriacy via the unlawfull deprivation of
Plaintiff's lawful propeerty, and by extension thereof, his
civil right.
40. Defendants, acting under the color of law/color of
authority, acting under the office of one, Charles B. Graves,
state prosecutor, engaged in an unauthorized ex parte
communication bewteen  defendants and the court. (Exh. L,
EXPARTE COMMUNICATION).

[26]

41. Hence, by virtue of his/her/their office, while acting
under color of law/color of authority re the continuing
conspiracy supra defendants were able to continue to deprive
Plaintiff of his civil rights.


[ RELIEF REQUESTED ]


WHEREFORE, Hampton request the following relief:
a. COUNT [I] against defendants for compensatoray damages of
approximately $300,000,000.00; punitive damages for
defendant's deprivation of Constitutional Rights and
privileges;


b. COUNT [ii] punitive damages of approxiimately
$100,000,000.00 for conspiracy to deprive persons of equal
protection of the laws;


c. COUNT [III] judgement against defendants jointly and
severally for compensatory damages  of $200,000,000.00; and
the costs of this action and any applicable attorneys fees;
nominal damagess, and such other  further relief as the Court
may deem proper

WILLIE HAMPTON 79948-011
USP. VICTORVILLE
P.O. Box 5500
ADELANTO, CA   92301

[27]

RE: CASE No.1:06CV00158 CERTIFICATE OF SERVICE

I, WILLIE HAMPTON, hereby certify that I served a true and correct copy of the following:

[FIRST AMENDED COMPLAINT [42 USC § 1983]

Which is deamed filed at the time it was delivered to prison authorities for forwarding to the court, Houston v. Lack, 101 L.ed 245 (1988), upon the court and parties to litigation and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelop addressed to:

CLERK'S OFFICE/United States District Court/District of Columbia

E. Barrett Prettyman U.S. Courthouse

333 Constitution Avenue, N.W.

Washington, DC  20001

and deposited same in the United States Postal Mail at the United States Penitentiary, Victorville, California on the 15th day of February 2006.

Willie Hampton/Pro-se